# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| DEPRAG, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:12-cv-320 |
| | § | |
| MINE SHIELD, LLC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF DEPRAG, INC.'S MOTION TO DISMISS DEFENDANT MINE SHIELD, LLC'S AMENDED COUNTERCLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6) AND TO STRIKE AFFIRMATIVE DEFENSE OF FRAUD PURSUANT TO FED. R. CIV. P. 12(f)

The following are pending before the court:

1.  Plaintiff DEPRAG, Inc.'s motion to dismiss Defendant Mine Shield, LLC's amended counterclaim pursuant to FED. R. CIV. P. 12(b)(6) and to strike affirmative defense of fraud pursuant to FED. R. CIV. P. 12(f) (docket entry #11);

2.  Defendant Mine Shield, LLC's response objecting to Plaintiff's FED. R. CIV. P. 12(b)(6) motion to dismiss Defendant's amended counterclaim and FED. R. CIV. P. 12(f) motion to strike Defendant's affirmative defense of fraud (docket entry #14); and

3.  Plaintiff DEPRAG, Inc.'s reply to Defendant Mine Shield, LLC's response objecting to Plaintiff's FED. R. CIV. P. 12(b)(6) motion to dismiss (docket entry #15).

Having considered the Plaintiff's motion and the briefing of the parties, the court finds that the motion should be denied.

## BACKGROUND

The facts, according to the Defendant's amended answer and amended counterclaim, are as follows:

24. During March and April 2011, Defendant and Plaintiff discussed the possibility of Plaintiff producing an air motor for Defendant for the use in Defendant's underground mine refuge chambers which are chambers that provide limited safety to miners involved in a mine catastrophe.

25. As a result of their discussions, Plaintiff and Defendant entered into an agreement for Plaintiff to build a prototype motor, pursuant to Defendant's specification and required purpose, for which payment of $5,200 was made by Defendant to Plaintiff. (Exhibit A)

26. The prototype was produced by Plaintiff in a facility, at this time known only to Plaintiff, and shipped to Defendant on or about June 4, 2011 at its facility in Lancaster, Kentucky.

27. Upon receipt of the prototype in June 2011, Defendant began performing tests on the prototype to ensure it met Defendant's requirements, specifications and intended use.

28. Based on, and in reliance on, the prototype's quality, performance and compliance with Defendant's specification, as disclosed by Defendant's testing of the prototype, as well as Plaintiff's representations that all future air motors purchased by Defendant would be of similar quality, on or about October 18, 2011, Defendant and Plaintiff discussed the purchase of additional motors all of which were to be of the quality and specifications of the prototype and to be used for the purpose previously discussed.

29. On or about December 16, 2011, Plaintiff sent air motors from a destination known at this time only by Plaintiff, to Defendant's Lancaster, Kentucky facility. Due to the expressed use for these air motors in underground mine refuge shelters, each air motor was tested beginning on or about February 2012.

30. During testing of the air motors by Defendant, it was discovered the motors sent by Plaintiff in December 2011 were not of the quality and specifications required, or of the quality and specifications of the prototype, and would not work for the purpose for which they were purchased. The goods received were inferior goods which failed to meet the specification requirements of Defendant. The goods received failed to meet the performance dynamics demonstrate [sic] by the prototype furnished to Defendant by Plaintiff; a prototype manufactured and sold to Defendant to represent the type of goods Plaintiff would continue to manufacture for Defendant, and manufactured by Plaintiff for the purpose of inducing reliance on the part of Defendant to purchase like goods.

31. On or about February 23, 2012, Defendant notified Plaintiff of the

inferiority of the goods shipped to Defendant, stating testing had revealed severe quality issues.

32. Based on the test results of the air motors shipped to Defendant in December 2011, during or about April, 2012, Defendant discontinued any intended use of the motors because the motors were inferior to the prototype provided by Plaintiff and could not be placed in underground mine refuge chambers whose sole purpose was to extend the life and survivability of miners caught in a catastrophe, all of which Plaintiff was aware.

33. Failure of the motors, or use of inferior motors, was not an option as any failure could result in the death of miners.

34. The air motors shipped to Defendant by Plaintiff, with the exception of the prototype, were returned to Plaintiff.

Defendant's Amd. Answer and Amd. Counterclaim, pp. 6-8, ¶¶ 24-34.

On April 26, 2012, the Plaintiff filed its original petition for suit on sworn account in the 431st Judicial District Court of Denton County, Texas. On May 25, 2012, the Defendant removed this case to this court. The Defendant subsequently filed an answer and counterclaim. On June 22, 2012, the Plaintiff filed an amended complaint. The Defendant filed an amended answer and amended counterclaim[s] on July 6, 2012. The Plaintiff moves to dismiss the Defendant's amended counterclaims of fraud, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for particular purpose and moves to strike the Defendant's affirmative defense of fraud.

### LEGAL STANDARD

In passing on a Rule 12(b)(6) motion, a court must accept all of the plaintiff's allegations as true. *Ballard v. Wall*, 413 F.3d 510, 514 (5th Cir. 2005). A claim will survive an attack under Rule 12(b)(6) if it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007). In other words, a claim may

not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 563 n.8. Although detailed factual allegations are not required, a plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions;" "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The complaint must be factually suggestive, so as to "raise a right to relief above the speculative level," *id.* at 555, and into the "realm of plausible liability." *Id.* at 557 n.5. Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### DISCUSSION AND ANALYSIS

**1.      Fraud Claim**

The Plaintiff argues that the Defendant has failed to plead enough facts to state a claim for fraud.[1] Under Texas law, a claimant alleging fraud must prove the following: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam).

Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading standard

---

[1] The Plaintiff further moves to strike the Defendant's affirmative defense of fraud pursuant to FED. R. CIV. P. 12(f). For the reasons stated above, the Plaintiff's motion is denied.

for fraud claims and requires that a party "state with particularity the circumstances constituting fraud." The Fifth Circuit has interpreted Rule 9(b) to "require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (quoting *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)). But "[t]he particularity demanded by Rule 9(b) necessarily differs with the facts of each case." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067-68 (5th Cir.1994).

Taking the facts alleged in the light most favorable to the Defendant, the court finds that the Defendant has stated a facially plausible claim for fraud. *See Encompass Office Solutions, Inc. v. Connecticut General Life Ins. Co.*, 2012 WL 3030376, *9 (N.D. Tex. 2012). Accordingly, the Plaintiff's motion to dismiss this claim is **DENIED**.

  **2.** **Warranty Claims**

The Plaintiff further argues that the Defendant failed to plead enough facts to satisfy its breach of warranty claims. "To maintain an action for a breach of warranty, a buyer must notify the seller that a breach occurred within a reasonable time after he discovers or should have discovered any breach." *Hull v. South Coast Catamarans, L.P.*, 365 S.W.3d 35, 43 (Tex. App. – Houston [1st Dist.] 2011, pet. denied); *see* TEX. BUS. & COM. CODE ANN. § 2.607(c)(1) (West 2009). "Failure to notify the seller of the breach, thereby allowing the seller an opportunity to cure, bars recovery on the basis of breach of warranty." *Id*. at 44 (citation omitted). The Plaintiff contends that the Defendant's pleading does not assert that the Defendant provided the Plaintiff with notice of the

alleged defects so that the Plaintiff could have an opportunity to cure the same. The court disagrees. In paragraph 31 of the Defendant's amended answer and amended counterclaim, the Defendant states that it "notified Plaintiff of the inferiority of the goods shipped to Defendant, stating testing had revealed severe quality issues." The court finds that the Defendant has stated facially plausible breach of warranty claims. Accordingly, the Plaintiff's motion to dismiss these claims is **DENIED**.

## Conclusion

Based on the foregoing, Plaintiff DEPRAG, Inc.'s motion to dismiss Defendant Mine Shield, LLC's amended counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) and to strike affirmative defense of fraud pursuant to Fed. R. Civ. P. 12(f) (docket entry #11) is hereby **DENIED**.

IT IS SO ORDERED.

**SIGNED this the 24th day of March, 2013.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE