IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DEPRAG, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:12-cv-320 |
| | § | |
| MINE SHIELD, LLC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER DENYING THE DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND/OR IMPROPER VENUE, OR, ALTERNATIVELY TO TRANSFER ON FORUM NON CONVENIENS GROUNDS**

The following motion, response, reply and surreply are pending before the court:

1. Mine Shield, LLC's motion to dismiss for lack of personal jurisdiction and/or improper venue, or alternatively to transfer on *forum non conveniens* grounds (docket entry #25).

2. Deprag, Inc.'s response to Mine Shield, LLC's motion to dismiss for lack of personal jurisdiction and/or improper venue, or alternatively to transfer on *forum non conveniens* grounds (docket entry #28).

3. Mine Shield, LLC's reply to Deprag, Inc.'s response to Mine Shield, LLC's motion to dismiss for lack of personal jurisdiction and/or improper venue, or alternatively to transfer on *forum non conveniens* grounds (docket entry #31).

4. Deprag, Inc.'s surreply to Mine Shield, LLC's reply to Deprag's response to Mine Shield, LLC's motion to dismiss for lack of personal jurisdiction and/or improper venue, or alternatively to transfer on *forum non conveniens* grounds (docket entry #33).

Having considered the Defendant's motion to dismiss for lack of personal jurisdiction and/or improper venue, or, alternatively to transfer on *forum non conveniens* grounds, the court is of the opinion that the motion should be denied.

## PROCEDURAL HISTORY

On April 26, 2012, Deprag, Inc. ("Deprag") filed its original petition against Mine Shield, LLC ("Mine Shield") in the 431st Judicial District court of Denton County, Texas. Mine Shield removed the action to this court based on diversity of citizenship. Thereafter, on June 22, 2012, Deprag filed an amended complaint. On July 6, 2012, Mine Shield filed an amended answer and amended counterclaim. On January 18, 2013, Deprag filed its original answer to Mine Shield's amended counterclaim.

## FACTUAL BACKGROUND

Deprag is a Texas corporation with its principal place of business in Lewisville, Texas. Pl. Resp. To Mine Shield's Mtn. to Dismiss, p. 1, ¶ 1. Mine Shield is a Kentucky limited liability corporation that manufactures underground mine shelters with its principal place of business in Lancaster, Kentucky. Mine Shield's Mtn. to Dismiss (Memorandum of Mine Shield), p. 2.

On or about March 22, 2011, Terry Huffman ("Huffman"), Mine Shield's Vice President for Marketing, was exploring new options for underground mine shelter air motors and came across Deprag's web site. *Id.* Huffman then contacted Lori Logan ("Logan"), Marketing Manager for Deprag in Lewisville, Texas, in order to discuss the possibility of Deprag producing air motors for Mine Shield. *Id.* Deprag forwarded Mine Shield's request to its German parent company, Deprag Shulz GMBH u. Co. ("Deprag Germany"), who designed and manufactured

the air motor prototype. Mine Shield's Mtn. to Dismiss (Memorandum of Mine Shield), p. 2; Pl. Resp. to Mine Shield's Mtn. to Dismiss, p. 2, ¶ 4. After Mine Shield tested the prototype air motor, it sent a purchase order to Deprag for the purchase of 200 air motors. Mine Shield's Mtn. to Dismiss (Memorandum of Mine Shield), p. 4; Pl. Resp. to Mine Shield's Mtn. to Dismiss, p. 3, ¶ 7.

After shipment of a portion of the air motors, Mine Shield's Quality Manager, Justin Conner ("Conner"), notified Deprag via email that problems with the air motors were discovered during testing and inspection. Mine Shield's Mtn. to Dismiss (Memorandum of Mine Shield), p. 5; Pl. Resp. to Mine Shield's Mtn. to Dismiss, p. 3-4, ¶ 10. Lori Logan of Deprag directed Conner to return the motors to Deprag's Lewisville office, where Logan forwarded the fans to Deprag Germany for testing. Mine Shield's Mtn. to Dismiss (Memorandum of Mine Shield), p. 5. After receiving Deprag Germany's testing results, Mine Shield sent Deprag a letter, on or about March 23, 2012[1], notifying it that Mine Shield would no longer accept products or services from Deprag. *Id.* The letter further requested reimbursement for costs incurred on the building of the prototype. *Id.*

On April 26, 2012, Deprag filed suit against Mine Shield in Texas state court, alleging breach of oral contract, quantum meruit, and attorney fees. *Id.* at 6. Mine Shield removed the action to this court and filed an answer and counterclaim, citing lack of personal jurisdiction and improper venue. *Id.* Mine Shield then filed a motion to dismiss for lack of personal jurisdiction and/or improper venue, or alternatively to transfer on *forum non conveniens* grounds. *Id.*

---

[1] Although Mine Shield's Motion to Dismiss states the date as March 23, 2011, the court presumes that the actual date is March 23, 2012.

## **LEGAL STANDARD**

In determining whether there is personal jurisdiction over a non-resident defendant, a two-step analysis is conducted. *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, the court must determine whether the long-arm statute of the forum state permits the exercise of jurisdiction, provided that there is not a controlling federal statute regarding service of process. *Id.* Second, it must be determined whether such exercise of jurisdiction comports with due process. *Id.* The Texas long-arm statute has the same scope as the Constitution. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (2000); *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-17.045 (West 2008). As a result, the determination of a non-resident's amenability to personal jurisdiction under the Texas long-arm statute is a federal style inquiry as to whether jurisdiction comports with federal constitutional guarantees. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990). To satisfy due process clause requirements, the non-resident must have some minimum contacts with the forum which result from an affirmative act or acts, and it cannot be unfair or unreasonable to require the non-resident to defend the suit in the forum state. *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985).

Specific jurisdiction exists where the plaintiff alleges a cause of action which grows out of or relates to a contact between the defendant and the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984). Elements which must exist for the court to exercise specific jurisdiction are: (1) the foreign defendant must purposefully direct his activities at residents of the forum, and (2) the cause of action must arise from or be connected with such activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

Conversely, general jurisdiction occurs when "a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum . . . ." *Helicopteros*, 466 U.S. at 414 n. 9. General jurisdiction exists only when the defendant's contacts with the State constitute "continuous and systematic" general contacts with the forum. *Id.* at 416. It can hardly be said that a defendant who has continuous and systematic contacts within a given state has not purposefully availed itself of the privileges and benefits of the laws of the state.

After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, the burden of establishing the district court's jurisdiction lies with the party seeking to invoke the court's jurisdiction. *Alpine*, 205 F.3d at 215. When, as here, no evidentiary hearing is conducted, "the party seeking to assert jurisdiction must present sufficient facts as to make out only a prima facie case supporting jurisdiction." *Id.* (citation omitted). When considering the motion to dismiss, the court must accept as true the plaintiff's uncontroverted allegations and resolve all factual disputes in favor of the plaintiff. *Id.* (citations omitted).

"[V]enue in a case removed from state court is prescribed by the removal statute itself, 28 U.S.C. § 1441." *Dunn v. Babco Textron*, 912 F.Supp. 231, 232 (E.D. Tex. 1995). Under the removal statute,

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

Under the *forum non conveniens* doctrine, a court may decline jurisdiction and actually dismiss a case, even when the case is properly before the court, if it is more convenient to try the case in another forum. *In re: Volkswagen of America, Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (citation omitted). Under 28 U.S.C. § 1404(a), the party seeking a transfer of venue must "clearly demonstrate that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Id*. at 315. Here, Mine Shield refers to the common law doctrine of forum non conveniens, but ultimately asks for a transfer of this case under 28 U.S.C. § 1404(a) to the United States District court for the Eastern District of Kentucky.

When weighing the motion to transfer venue under § 1404(a), the court considers the private interest factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id*. The court also considers the four public interest factors: (1) administrative difficulties caused by court congestion; (2) local interest in adjudicating local disputes; (3) unfairness of burdening citizens in an unrelated forum with jury duty; (4) avoidance of unnecessary problems in conflict of laws. *Id*.

## DISCUSSION AND ANALYSIS

### I. PERSONAL JURISDICTION

Mine Shield argues that it does not have sufficient minimum contacts with the State of Texas. Mine Shield asserts that it "merely entered into a contract with a resident of the forum state" and that such activity fails to rise to the level of establishing minimum contacts. Mine Shield's Mtn. to Dismiss (Memorandum of Mine Shield), p. 10. Mine Shield claims that its

initial act with Deprag was "nothing more than contact through an internet advertisement" and that all additional contact with Deprag consisted of email exchanges and telephone calls. *Id.* Mine Shield further claims that Deprag was simply "a conduit for information" and "way-point for deliveries." *Id.* In support of its argument, Mine Shield cites *Freudensprung v. Offshore Tech. Servs., Inc.*, which held that mailing payments to the forum state, engaging in communications related to the contract, and the existence of a contract between a non-resident defendant and resident of the forum state were insufficient to establish minimum contacts. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004).

Deprag disagrees with Mine Shield's analysis of the facts, stating that "Mine Shield purposefully availed itself of the privilege of conducting activities in Texas." Pl. Resp. To Mine Shield's Mtn. to Dismiss, p. 4, ¶ 14. Deprag states that Mine Shield reached out to Deprag's facility in Lewisville, Texas and entered into the contracts that are the subject of the present litigation. *Id.* at p. 4-5, ¶ 14. Deprag also points to a bevy of additional activity that demonstrates Mine Shield's purposeful availment of Texas law, including:

> i. directing Deprag to design a specific air motor prototype;
> ii. consummating the initial contract by accepting the prototype;
> iii. sending two separate payments for the prototype to Deprag's Texas facility;
> iv. solicitation and purchase of additional air motors through Deprag's Texas facility;
> v. entering into a contract for an additional 200 air motors; and
> vi. payment for shipment from Texas to Kentucky.

*Id.* at p. 5-6, ¶¶ 15-19.

Deprag further asserts that the "Business Terms and Conditions" on Deprag's website require that any dispute arising from the contract would be "construed in accordance with, and

governed by, the laws of the State of Texas" and that "Venue for any dispute shall be Denton County, Texas." *Id.* at p. 6, ¶ 18.

In resolving all factual conflicts in favor of Deprag, the evidence suggests that this court may properly exercise *in personam* jurisdiction over Mine Shield. "For a court to exercise 'specific' jurisdiction over a defendant, the cause of action must arise out of the defendant's contacts with the forum." *In re Norplant Contraceptive Products Liability Litigation*, 886 F. Supp. 586, 590 (E.D. Tex. 1995) (citing *Dalton v. R & W Marine, Inc.* 897 F.2d 1359, 1361 (5th Cir. 1990)). While it is true that merely entering into a contract with a resident of the forum state is insufficient to automatically establish minimum contacts, *Freudensprung v. Offshore Technical Serv., Inc.*, 379 F.3d at 344, prior negotiations, anticipated future consequences, and the course of dealing determine "whether the defendant purposefully established minimum contacts within the forum." *Burger King*, 471 U.S. at 478-79.

Over the course of a year, Mine Shield consistently "reached out" to a Texas corporation via telephone and email with the intended purpose of entering into a long-standing contractual relationship with the Texas corporation. *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 382 (5th Cir. 2003). Significantly, the parties contemplated a long-term business relationship through an anticipated increase in future dealings. Pl. Exhibit E; *MJCM, L.L.C. v. Sky Bank*, 2005 WL 2121549, *5 (S.D. Tex. 2005). Mine Shield cannot avoid specific jurisdiction simply because the air motors were manufactured outside of the forum. Rather, specific jurisdiction is based on Mine Shield purposefully directing its actions toward a corporation in the forum state. *See Central Freight Lines*, 322 F.3d at 382; *see also Burger King*, 471 U.S. at 476. Further, it cannot be said that Mine Shield's contacts with the State of Texas

are "random," "fortuitous," or "attenuated." *Central Freight Lines*, 322 F.3d at 383 (citation omitted). Whether a forum selection clause exists is irrelevant where, as in the present case, the agreement does not "contain any provision that would give [the defendant] reason to think that it could *not* be haled into court in Texas." *Id.* Based on the aforementioned facts, Mine Shield should have reasonably anticipated being haled into court in Texas.

The court has determined that it is vested with specific jurisdiction over Mine Shield so it is not necessary to engage in a general jurisdiction analysis. Because the court has concluded that Mine Shield has sufficient minimum contacts with the State of Texas, the court must now determine if its assumption of jurisdiction would offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The court should consider (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the efficient resolution of controversies between the states, and (5) the shared interests of the states in furthering fundamental, substantive social policies. *See generally Asahi Metal Industry Co., Ltd. v. Superior Ct.*, 480 U.S. 102, 113 (1987); *Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867, 874 (5th Cir. 1999).

In this case, Mine Shield has not "present[ed] a compelling case in support of its claim that asserting personal jurisdiction . . . would be offensive to traditional notions of fair play and substantial justice." *See Central Freight Line*, 322 F.3d at 385. Mine Shield purposefully injected itself into this forum through its one year business relationship with Deprag, a Texas corporation.

Finally, Texas will provide a convenient forum for the adjudication of this case. This

point will be addressed more fully below but the burden of requiring Mine Shield to litigate in Texas is no greater than the burden of requiring Deprag to litigate in Kentucky. As such, the exercise of jurisdiction over Mine Shield by this court will not offend traditional notions of fair play and substantial justice. The court finds that it has personal jurisdiction over Mine Shield.

## II.  IMPROPER VENUE

Mine Shield's reliance on 28 U.S.C. § 1391(a) in support of its motion seeking dismissal for improper venue is misplaced because § 1391(a) does not govern venue in diversity cases removed from state court to federal court. The removal statute itself governs venue in such cases. *Dunn*, 912 F.Supp. at 231. Mine Shield appears to concede this point as suggested by the absence of such an argument in Mine Shield's reply. The court finds that venue is proper in this court.

## III.  TRANSFER OF VENUE

As previously mentioned, the party seeking transfer of venue must clearly demonstrate that the appropriate factors weigh in favor of transfer. *In re: Volkswagen of America, Inc.*, 545 F.3d at 315. The court will refrain from transferring venue when the result would merely shift the cost and inconvenience to the nonmoving party.

### A.  RELATIVE EASE OF ACCESS TO SOURCES OF PROOF

The accessibility and location of sources of proof are of "slight significance due to the increasing ease of storage, communication, copying, and transportation of documents and information . . . ." *Id.* at 705. Aside from documentation, the only pieces of physical evidence specifically mentioned by Mine Shield are small air motors. It appears as though Mine Shield has four air motors in its possession while Deprag has two. Pl. Resp. to Mine Shield's Mtn. to

Dismiss, p. 10, ¶ 29.  Although Mine Shield does possess a marginally greater number of air motors than Deprag, Mine Shield admits that the air motors could "easily fit into counsel's pocket."  Mine Shield's Mtn. to Dismiss (Memorandum of Mine Shield), p. 16.  Given the negligible difference in the amount of evidence at each location, the court finds that this factor does not weigh in favor of transfer.

      **B.**      **AVAILABILITY OF COMPULSORY PROCESS TO SECURE THE ATTENDANCE OF WITNESSES**

Mine Shield has argued that only two witnesses are located in Texas while broadly asserting that "[t]he majority of witnesses are in Germany and Kentucky."  Mine Shield's Mtn. to Dismiss (Memorandum of Mine Shield), p. 16.  Mine Shield further contends that "[t]he absence . . . for an extended period of time of [Mine Shield's CEO, CFO, and Plant Manager] will obviously have a significant impact on the . . . company's ability to conduct business as usual."  Mine Shield's Resp., p. 9, ¶ 11.  However, Mine Shield does not provide any detail on how compulsory process would be affected by a transfer.  Without more, Mine Shield has not established that transferring venue would do anything more than shift the inconvenience to Deprag by requiring members of Deprag's management team to travel to Kentucky.  This factor does not weigh in favor of transfer.

      **C.**      **THE COST OF ATTENDANCE FOR WILLING WITNESSES**

Mine Shield has stated that the cost of obtaining the attendance of witnesses would be less if venue were transferred to Kentucky since more of the U.S. witnesses are located in Kentucky.  Mine Shield's Mtn. to Dismiss (Memorandum of Mine Shield), p. 16.  But considering the convenience of party witnesses is insignificant because a transfer would merely

shift the inconvenience from one party to the other.  *Frederick v. Advanced Financial Solutions, Inc.*, 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007).  In this case, all of the identified witnesses are employees of Mine Shield, Deprag, or Deprag Germany.  Accordingly, this factor does not weigh in favor of transfer.

Mine Shield concedes that the public interest factors are not significant in this case.  Mine Shield's Mtn. to Dismiss (Memorandum of Mine Shield), p. 16.  The court will therefore refrain from weighing the public interest factors.

Because Mine Shield has not carried its burden of clearly demonstrating that a transfer is "for the convenience of parties and witnesses" and because all of the factors weigh against transfer, the court finds that the proper venue for this case is the Eastern District of Texas.

## CONCLUSION

Based on the foregoing, Mine Shield, LLC's motion to dismiss for lack of personal jurisdiction and/or improper venue, or alternatively to transfer on *forum non conveniens* grounds is hereby **DENIED**.

IT IS SO ORDERED.

**SIGNED this the 3rd day of January, 2014.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE